**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|                        |   |                        |
|------------------------|---|------------------------|
|                        | : |                        |
| In re:                 | : | Chapter 11             |
|                        | : |                        |
| GULFCO HOLDING CO.,    | : | Case No. 13-13113 (BLS) |
|                        | : |                        |
| Debtor.[1]             | : | **Hearing Date:  Feb. 18, 2014 @ 11:00 AM (ET)** |
|                        | : | **Objection Deadline:  Feb. 12, 2014 @ 2:00 PM (ET)** |
|                        | : |                        |

**MOTION OF THE DEBTOR DIRECTING THE EXAMINATION OF**
**PROSPECT CAPITAL CORPORATION PURSUANT TO**
**RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

The above captioned debtor and debtor-in-possession (the "**Debtor**"), by and through its undersigned counsel, hereby moves the Court (this "**Motion**"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("**Rule 2004**"), for authorization to take the oral examination of those witnesses identified, and directing Prospect Capital Corporation ("**Prospect**") to produce those documents described, in Exhibit B hereto.  In support hereof, the Debtor states as follows:

## PRELIMINARY STATEMENT

1.     The Debtor's investigation into Prospect's unlawful conduct with respect to the Debtor remains ongoing.  Since the Debtor commenced this bankruptcy case, however, the Debtor has learned that its bankruptcy and loss of its primary asset — for which the Debtor paid $72 million in October 2012 — resulted from Prospect's scheme to steal that asset:  Debtor's wholly owned subsidiary Gulf Coast Machine and Supply Company. ("**GCMSC**").

2.     In 2012, Prospect tried and failed to acquire GCMSC.  After Prospect lost its bid to acquire GCMSC, it offered to finance part of the Debtor's acquisition of GCMSC.  Prospect,

---

[1]     The Debtor's business address is 10 Westport Road, Suite C204, Wilton, CT 06897.  The last four digits of the Debtor's tax identification number are 2900.

however, concealed from the Debtor its desire and its own previous failed attempts to acquire GCMSC.  Unaware of Prospect's desires and previous endeavor, the Debtor borrowed $42 million from Prospect to partially finance the Debtor's $72 million acquisition of GCMSC in October 2012.

3.      In the thirteen months that followed the Debtor's acquisition of GCMSC, Prospect implemented a scheme to systematically pressure GCMSC in an effort to realize its true goal:  to own GCMSC.  For example, in May 2013, Prospect seized upon the effects of an industry downturn by asserting a financial covenant default under its loan agreement and then charged and collected significant default interest while GCMSC's other lender did not.

4.      While Prospect pressured GCMSC and the Debtor by charging and collecting default interest, Prospect refused to discuss in good faith the financial covenant default that Prospect asserted.  GCMSC and the Debtor, on numerous occasions, made several good faith proposals to resolve Prospect's asserted defaults.  Prospect, however, responded to such proposals with unrealistic counter-demands or did not respond at all.

5.      Rather, Prospect moved forward with its goal of transferring ownership and control of the Debtor's property to itself.  In September 2013, Prospect's misconduct caused the Debtor's and GCMSC's other lender to install a $1 million block on GCMSC's line of credit. Prior to September 2013, the GCMSC did not have any liquidity issues.  After Prospect caused the $1 million block, GCMSC began having liquidity problems.  Prospect took advantage of the situation it had helped create and pushed Debtor and GCMSC even harder for concessions.

6.      In the next month, while the Debtor and GCMSC believed they were involved in good faith discussions with Prospect, and during a time when GCMSC's business showed signs of improvement, Prospect consummated its clandestine plan to take GCMSC from the Debtor.

2

7.      In a surprise move on November 8, 2013, with the only asserted default being a financial covenant — as opposed to a non-payment — violation, Prospect purported to exercise its rights under the Debtor's pledge of its stock in GCMSC to oust GCMSC's entire board of directors, install three Prospect personnel as directors, and transfer 99.9% of the ownership and control of GCMSC to itself.  This left Debtor with a mere 0.1% ownership interest, and no control, in GCMSC.

8.      Although during the bankruptcy case the Debtor has attempted to learn additional facts surrounding Prospect's prepetition misconduct, Prospect has stonewalled those efforts and continues its attempts to conceal its misconduct.

9.      The Debtor has contemporaneously filed a complaint to recover, among other things, the involuntary, preferential and fraudulent transfers that Prospect forced to be made to itself in the Debtor's name, on the Debtor's behalf, without the Debtor's consent, and while serving as a fiduciary to the Debtor.  A true and correct copy of that complaint is annexed hereto as Exhibit A.

10.     The Debtor, however, requires examinations under Fed. R. Bankr. P. 2004, to investigate the additional, non-bankruptcy claims that it has against Prospect so that it can file an amended complaint that asserts all claims.

## BACKGROUND

A.      Events Leading Up To Chapter 11.

11.     On October 12, 2012 (the "**Purchase Date**"), the Debtor closed a transaction through which it became the sole owner of GCMSC, a Texas corporation.  GCMSC was and is in the business of providing forging and finishing services to companies in the oil and gas industry and to industrial manufacturers.

3

12.     The Debtor's acquisition of GCMSC — which the Debtor accomplished through a merger transaction — was funded substantially through an equity infusion in excess of $29 million from the Debtor's shareholders and a $42 million term loan (the "**Term Loan**") from the Debtor's and GCMSC's lender, Prospect.  The Term Loan was documented by that certain Credit Agreement dated October 12, 2012 by and among, among other parties, the Debtor, GCMSC and Prospect (the "**Credit Agreement**").

13.     The Debtor guaranteed repayment of GCMSC's loan to Prospect under that certain Guaranty and Security Agreement (the "**Guaranty and Security Agreement**").  As collateral for its obligations to Prospect under the Guaranty and Security Agreement, the Debtor pledged all of its stock in GCMSC.

14.     Soon after the Purchase Date, GCMSC experienced weaker revenues than originally projected by certain members of the seller-installed management team.

15.     In May 2013, the Debtor determined that GCMSC's declining revenues resulted from:  (a) substantially decreased demand for GCMSC product not previously disclosed to the Debtor, and (b) the failure of significant equipment.  As a result of these decreased revenues, in May 2013, Prospect and PNC Bank, National Association ("**PNC**"), the Debtor's lender under a line of credit primarily secured by the Debtor's accounts receivable (the "**Line of Credit**"), issued default notices and reservations of rights asserting that GCMSC and the Debtor violated a financial covenant under their respective loan agreements.  Prospect also demanded that the Debtor and GCMSC pay interest on the Term Loan at the default rate fixed under the Credit Agreement.

16.     In the Spring and Summer of 2013, the Debtor improved GCMSC's operations by, *inter alia*, working with GCMSC's management to implement personnel and cost reductions,

7970501 v1

aligning GCMSC's operational structure with the (then) current levels of demand, and adjusting GCMSC's management team to more effectively operate the business.

17.     The Debtor also attempted to discuss the asserted covenant violation under the Term Loan and the Line of Credit with Prospect and PNC.  Beginning in June 2013, the Debtor made various proposals to Prospect and PNC.  While PNC had signaled a willingness to accept the various proposals made by the Debtor, Prospect, on the other hand, made unreasonable demands and discontinued dialogue with the Debtor after the Debtor questioned the utility and necessity of Prospect's demands.

18.     As a result of Prospect's unreasonable demands and discontinuing dialogue, the Debtor was unable to reach an agreement with Prospect regarding the asserted covenant default, which, in September 2013, caused PNC to issue a notice asserting its right to terminate the Line of Credit within ninety (90) days and institute a $1 million block on GCMSC's Line of Credit (the "**Line of Credit Block**").

19.     Prior to the Line of Credit Block, GCMSC did not experience any liquidity challenges.  As a result of the Line of Credit Block, however, GCMSC began facing some liquidity challenges.  In September, October and November, 2013, the Debtor continued to make various proposals to Prospect and PNC.  As part of these proposals, one or more of the Debtor's shareholders expressed a willingness to invest additional funds to meet GCMSC's liquidity needs resulting from the Line of Credit Block.  Again, while PNC indicated a willingness to accept the various proposals made by the Debtor, Prospect continued to respond with unreasonable demands or did not respond at all.

20.     On November 8, 2013, without any advance notice, Prospect purported to assert rights under the Guaranty and Security Agreement to vote — in the Debtor's name — the

5

Debtor's stock in GCMSC.  As a result, Prospect purported to terminate the members of the Board of Directors, install officers and employees of Prospect as directors of GCMSC, and transfer all of the equity in and control over GCMSC to itself.

21.     For additional background, the Debtor incorporates by reference the allegations set forth in Exhibit A as if fully set forth herein.

**B.      The Debtor's Chapter 11 Case.**

22.     To protect the Debtor from Prospect's actions, the Debtor filed a voluntary petition for relief (the "**Petition**") on November 27, 2013, under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") thereby commencing the above captioned case, No. 13-13113-BLS (this "**Bankruptcy Case**").

23.     The Debtor continues to operate its property and manage its business as a Debtor-In-Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

24.     No Committee has been appointed in the Bankruptcy Case.

25.     In connection with its Bankruptcy Case, and investigating the liabilities and assets of the Debtor, the Debtor has notified various third parties of its intent to subpoena documents and/or the examination of witnesses pursuant to Rule 2004 of the Federal Rules of Bankruptcy procedure.

26.     Specifically, by letter dated January 14, 2014 (the "**2004 Notice Letter**"), the Debtor notified Prospect's counsel that it intended to seek documents and examinations from Prospects.  In connection with the 2004 Notice Letter, the Debtor issued specific document requests, identified topics of examination, and identified witnesses.  A true and correct copy of the 2004 Notice Letter is attached hereto as Exhibit B.

27.     Prospect responded that it would meet and confer, in accordance with Local Rule 2004-1, on January 17, 2004 (the "**Meet and Confer**").  See Exhibit C.

28.     The Parties held the Meet and Confer as scheduled.  Although the Debtor stood (and still stands) ready, willing, and able to discuss in good faith the information requested, Prospect refused to participate in the Meet and Confer in any manner.  Instead, Prospect stated that it would not produce any documents or witnesses absent a Court Order.  See Exhibit C.

29.     At no time did Prospect indicate a willingness to discuss the scope of the documents requested or topics of examination proposed. See Exhibit C.

## JURISDICTION AND VENUE

30.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The venue of the Debtor's chapter 11 case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Rule 2004 and Local Rule 2004-1.

## RELIEF REQUESTED AND BASIS THEREFOR

31.     Pursuant to Rule 2004, "[o]n motion of any party in interest, the court may order the examination of any entity," which may "relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."  Fed. R. Bankr. P. 2004(a).

32.     Generally, "[t]he purpose of the examination is to enable the trustee to discover the nature and extent of the bankruptcy estate." Id. (citing In re Drexel Burnham Lambert Grp., Inc., 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991)).

33.     The Delaware Bankruptcy Court has recognized that "[a] Rule 2004 examination 'is commonly recognized as more in the nature of a fishing expedition.'" In re Wash. Mut., Inc., 408 B.R. 45, 49 (Bankr. D. Del. 2009) (citing In re Bennett Funding Grp., Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)).

7

34.    "[C]ourts have also recognized that Rule 2004 examinations may be inappropriate 'where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee.'"  Id. (citing In re Enron Corp., 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002); Snyder v. Soc'y Bank, 181 B.R. 40, 42 (S.D. Tex. 1994), aff'd sub nom., In re Snyder, 52 F.3d 1067 (5th Cir. 1995)).

35.    The Debtor seeks production of the documents responsive to the requests set forth in Exhibit B in order to fully investigate the prepetition (and postpetition) misconduct of Prospect.  While the Debtor has asserted some claims against Prospect in a complaint filed contemporaneously herewith, the Debtor firmly believes that it holds additional claims against Prospect because of its prepetition (and likely post-petition) misconduct.  Obtaining the documents requested in Exhibit B will allow the Debtor to fully investigate Prospect's actions in connection with the Debtor and will allow the Debtor to formulate its remaining claims against Prospect and promptly amend its complaint to assert such claims.  The Debtor proposes that the document requests are narrowly tailored to accomplish this purpose.  The Debtor requests that such documents be made available within thirty (30) days from the entry of the Order granting this motion.

36.    Although it may prove unnecessary, Exhibit B also identifies certain witnesses and topics of examination for such witnesses.  The Debtor requests that the Court allow the Debtor, in the Debtor's discretion, to examine such witnesses and on such topics without further Order of the Court at the Debtor's convenience and after the Debtor receives production of the documents requested.  Each of the individuals identified, Robert Nabholz, Robert Melman, Stephen Stone, and Seb Cervinka, have intimate knowledge of the Debtor and GCMSC, and interacted with the Debtor's management in connection with GCMSC.

37.    In accordance with Local Rule 2004-1(b), the attached certification of the undersigned (the "**Certification**") confirms that a conference was held as required and no agreement was reached.  A true and correct copy of the Certification is attached hereto as <u>Exhibit C</u>.

WHEREFORE, the Debtor respectfully requests that the Court to enter an Order authorizing it to take the examination of Prospect, directing Prospect to produce documents in accordance with this Motion, and granting such other and further relief as the Court deems just and proper under the circumstances.

**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**

January 31, 2014

___*/s/ Michael J. Barrie*_____
Michael J. Barrie (No. 4684)
Jennifer R. Hoover (No. 5111)
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
jhoover@beneschlaw.com

 - and -

David W. Mellott, Esq. (*pro hac vice*)
200 Public Square, Suite 2300
Cleveland, Ohio  44114-2378
Telephone:  (216) 363-4465
Facsimile:  (216) 363-4588
dmellott@beneschlaw.com

*Counsel for the Debtor and Debtor-In Possession*

7970501 v1